# EXHIBIT "A"

Filing # 153079770 E-Filed 07/11/2022 03:00:45 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:   2022-012677-CA-01

REINIER ANGULO,

     Plaintiff,

**CIVIL ACTION SUMMONS**

v.

**WORKHORSE GROUP INC.,
UTILIMASTER CORPORATION, and
THE SHYFT GROUP USA, INC.,**

     Defendant.

_____/

THE STATE OF FLORIDA:
To Each Sheriff of Said State:

     YOU ARE HEREBY COMMANDED to serve this Summons, and a copy of the
Complaint on:

**UTILIMASTER CORPORATION
603 EARTHWAY BOULEVARD
BRISTOL, IN 46507**

### IMPORTANT

     A lawsuit has been filed against you.   You have 20 calendar days after this summons is
served on you to file a written response to the attached Complaint in this Court.   A phone call
will not protect you; your written response, including the above case number and named parties,
must be filed if you want the Court to hear your case.   If you do not file your response on time,
you may lose the case, and your wages, money, and property may thereafter be taken without
further warning from the Court.   There are other legal requirements.   You may want to call an
attorney right away.   If you do not know an attorney, you may call an attorney referral service or
legal aid office (list in the phone book).

     If you choose to file a written response yourself, at the same time you file your written
response to the Court, located at: Clerk of Court, Dade County Courthouse, 73 West Flagler Street,
Miami, Florida 33130, you must also mail or take a carbon copy or photocopy of your written
response to the Plaintiff's attorney noted below:

### IMPORTANTE

     Usted ha sido demandado legalmente.   Tiene 20 dias, contados a partir del recibo de esta
notifiacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.   Una
llamada telefonica no lo protegera.   Si usted desea que el tribunal considere su defensa, debe
presentar su repuesta por escrito, incluyendo el numero del caso y los nombres de las partes
interesadas.   Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser

despojado de sus ingresos y propiedades, o privado de sus derechos. sin previo aviso del tribunal. Existen otros requisitos legales.   Si lo desea, puede usted consultar a un abogado immediatamente. Si non conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's attorney" (Demandate o Abogado del Demanadante).

### IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous.   Vous avez 20 jour consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe auprès de ce Tribunal.   Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.   Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre solaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.   Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.   Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expendier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's attorney (Plaignant ou a son avocat) nomme ci-dessous.

**THOMAS SCOLARO, ESQUIRE
ADAM T. ROSE, ESQUIRE
LEESFIELD SCOLARO, P.A.
2350 South Dixie Highway
Miami, FL 33133
Telephone: 305-854-4900**
scolaro@leesfield.com; rose@leesfield.com; arguello@leesfield.com

DATED ON ___7/15/2022___, 2022.

Harvey Ruvin,
Clerk of Courts

Clerk of the Court



By: ___217043___
Deputy Clerk

(C O U R T   S E A L)

2

Filing # 152985096 E-Filed 07/08/2022 05:16:03 PM

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**I.    CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>REINIER ANGULO</u>
Plaintiff                                           Case # _____
                                                    Judge _____

vs.
<u>WORKHORSE GROUP INC., UTILIMASTER CORPORATION, THE SHYFT GROUP USA,</u>
<u>INC.</u>
Defendant

**II.    AMOUNT OF CLAIM**
Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

**III.    TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.   REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.   NUMBER OF CAUSES OF ACTION: [   ]**
(Specify)

  <u>2</u>

**VI.   IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.   HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.
    <u>N/A</u>

**VIII.   IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.   DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Thomas Scolaro</u>      Fla. Bar # <u>178276</u>
        Attorney or party           (Bar # if attorney)

<u>Thomas Scolaro</u>        <u>07/08/2022</u>
(type or print name)       Date

Filing # 152985096 E-Filed 07/08/2022 05:16:03 PM

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY. FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

**REINIER ANGULO**,

       Plaintiff,

vs.

**WORKHORSE GROUP INC.,
UTILIMASTER CORPORATION**, and
**THE SHYFT GROUP USA, INC.,**

       Defendants..

_____/

## COMPLAINT

     Plaintiff, Reinier Angulo, sues Defendants Workhorse Group Inc., Utilimaster Corporation, and The Shyft Group USA, Inc., and states:

     1.     Plaintiff Reinier Angulo ("Reinier") is a citizen of Florida.

     2.     Defendants Workhorse Group Inc., also known as Workhorse Trucks Inc. ("Workhorse"), Utilimaster Corporation ("Utilimaster"), and The Shyft Group USA, Inc. ("Shyft Group") are corporations authorized to do, and doing business, in Florida, and shall be referred to in this Complaint as "Defendants," unless individually identified.

     3.     At all times material, Workhorse designed, manufactured, sold, imported, distributed, and supplied a 2010 Workhorse W62 truck, bearing Florida license plate GCB105, and vehicle identification number 5B4MPG298A3439955 (hereinafter "subject truck").

     4.     At all times material, Utilimaster designed, manufactured, sold, imported, distributed, and supplied the subject truck.

5.      At all times material, Shyft Group designed, manufactured. sold. imported, distributed, and supplied the subject truck.

6.      At all times material, Defendants knew that their trucks, including the subject truck, would primarily be used as delivery vehicles, subject to high mileage and long hours of regular use over a period of years. The subject truck was sold to UPS and used as a delivery truck.

7.      At all times material, the subject truck was maintained in a condition which was without substantial change from the condition it was in when it left the custody and control of Defendants.

8.      At all times material, Defendants knew or should have known that when used in a reasonably foreseeable manner, there would be numerous instances of fires breaking out in their trucks.

9.      At all times material, Defendants were aware of numerous UPS truck fires occurring across North America dating back to 2010, including the following:

        a.      On or about February 25, 2010, a UPS truck was found ablaze by the local fire department, resulting in $90,000 in damage in Oakville, Ontario, Canada.

        b.      On or about February 20, 2015, a UPS truck caught fire in the vicinity of Anmoore, West Virginia.

        c.      On or about April 12, 2017, a UPS truck was gutted by fire in Freeport, Pennsylvania.

        d.      On or about April 9, 2018, a UPS truck was severely damaged due to a fire inside the truck in San Antonio, Texas.

        e.      On or about May 25, 2019, a UPS truck was destroyed after it caught fire in York County, Virginia.

f.      On or about September 20, 2019, a UPS truck was totaled after a fire broke out inside of it in Lubbock, Texas.

g.      On or about November 28, 2020, a UPS truck was completely destroyed after it caught fire in Escambia County, Florida.

h.      On or about December 24, 2020, the engine and cabin of a UPS truck caught fire in Kitchener, Ontario, Canada.

10.      At all times material, Defendants knew or should have known that the majority of highway vehicle fires originate in the engine. This was reported by the National Fire Data Center, which noted that between 2014-2016, 62.2% of highway vehicle fires originated in the engine. An August 2016 Report relied on by the NFPA, titled "Why Heavy Vehicles Catch Fire," which found that "[t]here are far too many truck, trailer and bus fires[,]" detailed that seven of the twelve common causes for truck fires pertained to components in the engine, including fuel line failures that result in leaks or sprays.

11.      At all times material, Defendants knew that fires occurring in their trucks' engine compartments posed a significant risk of bodily injury or death to drivers. The National Fire Protection Association ("NFPA") reported that truck fires were 36% more likely to result in death than fires in other types of vehicles.

12.      Despite this knowledge, Defendants did not design or build any fire protection into the subject truck to protect its drivers from a fire in the engine compartment, which is located immediately below and adjacent to where the driver sits. The only separation between the driver's cabin and the engine compartment was an approximately 2mm thin piece of aluminum, which Defendants knew or should have known was completely inadequate to protect a driver from serious bodily injury or death, or allow sufficient time to escape, in the event of an engine fire. In fact, the

previously cited 2016 report suggested as much: "Aluminum can melt during a truck fire. Steel and copper do not, other than at arc points."

13.     Defendants knew that once the 2mm aluminum engine cover melted away during an engine fire, the driver's cabin would become engulfed in flames and the driver would be subject to serious bodily injury or death. Defendants knew that drivers would need adequate fire protection and/or adequate time and warning to escape the truck to avoid injury or death, and that given the design and layout of the truck there would be instances where drivers would be completely unaware that there was an engine fire until it was too late.

14.     Notwithstanding Defendants' knowledge of the risk of serious bodily injury or death to drivers in the event of an engine fire, Defendants did not design or build the subject truck with adequate firewall protection, which would afford drivers sufficient time to escape the subject truck before it became engulfed in flames. Defendants also failed to design and build the subject truck with a fire suppression system, which would have substantially reduced or eliminated the possibility of an engine fire spreading into and engulfing the cabin.

15.     On or about February 5, 2020, Reinier was driving the subject truck with UPS' permission. While driving on FL-924 going approximately 50-55 mph, suddenly and without warning the subject truck lost power. Reinier felt an extreme heat and, upon looking down, immediately was engulfed in flames emanating from the aluminum engine cover which was disintegrating. Reinier desperately tried to stop the subject truck but the brakes were completely unresponsive. In order to stop the fireball truck, he was forced to crash it into the highway divider wall. He then jumped out in critical condition with second and third degree burns across his entire body.

4

16.     The entire cab was destroyed in the fire, and a later investigation showed that the aluminum engine cover had completely melted away.

### Claims Against Workhorse Group Inc.

#### COUNT 1: STRICT LIABILITY FOR DEFECTIVE PRODUCT DESIGN

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

17.     At all material times, Workhorse was engaged in the business of designing, manufacturing, selling, importing, distributing, and supplying trucks to be used by and in the general public.

18.     Workhorse designed, manufactured, distributed, and placed the subject truck into the stream of commerce expecting it would reach the public, including purchasers and all end users, without a substantial change that affected its condition.

19.     The subject truck was unreasonably dangerous because of its design, in that it failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by Workhorse when it designed the subject truck. Specifically, the subject truck:

        a.     Was not designed to withstand ordinary and foreseeable use;

        b.     Was designed with a thin aluminum engine cover separating the driver's cab from the engine compartment, which provided inadequate fire protection in the event of an engine fire;

        c.     Was not designed to minimize or eliminate the foreseeable risk of an engine fire engulfing the cabin;

        d.     Was designed with no, or inadequate, safeguards to prevent a foreseeable

5

engine fire from engulfing the cabin;

e. Was not designed with adequate fireproofing, fire suppression, flame retardant materials, or other safeguards to allow an occupant in the cabin enough time to escape in the event of a foreseeable engine fire;

f. Was not designed with adequate fireproof or flame retardant materials to provide the cabin with sufficient insulation or protection from a foreseeable engine fire;

g. Was not designed with a fire suppression system, which would have minimized or eliminated the foreseeable risk of an engine fire engulfing the cabin;

h. Was not designed with adequate fireproof or flame retardant materials that prevent fire from entering the cabin through openings; and

i. Was not designed to be reasonably safe in the event a foreseeable fire occurred.

20. The subject truck was defective when it left the possession of Workhorse.

21. The subject truck reached Plaintiff, its user, without a substantial change that affected its condition.

22. As a direct and proximate result of Workhorse's defectively designed truck, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

23. **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

6

**COUNT 2: STRICT LIABILITY FOR DEFECTIVE MANUFACTURING OF PRODUCT**

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

24.     At all material times, Workhorse was engaged in the business of designing, manufacturing, selling, importing, distributing, and supplying trucks to be used by the general public.

25.     Workhorse designed, manufactured, distributed, and placed the subject truck into the stream of commerce expecting it would reach the public, including purchasers and all end users, without a substantial change that affected its condition.

26.     The subject truck was unreasonably dangerous due to a manufacturing defect, in that because of the way it was manufactured it failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by Workhorse when it manufactured the subject truck. Specifically, the subject truck:

　　　　a.     Was not manufactured to withstand ordinary and foreseeable use;

　　　　b.     Was manufactured with a thin aluminum engine cover separating the driver's cab from the engine compartment, which provided inadequate fire protection in the event of an engine fire;

　　　　c.     Was not manufactured to minimize or eliminate the foreseeable risk of an engine fire engulfing the cabin;

　　　　d.     Was manufactured with no, or inadequate, safeguards to prevent a foreseeable engine fire from engulfing the cabin;

　　　　e.     Was not manufactured with adequate fireproofing, fire suppression, flame retardant materials, or other safeguards to allow an occupant in the cabin enough time to

7

escape in the event of a foreseeable engine fire;

   f. Was not manufactured with adequate fireproof or flame retardant materials to provide the cabin with sufficient insulation or protection from a foreseeable engine fire;

   g. Was not manufactured with a fire suppression system, which would have minimized or eliminated the foreseeable risk of an engine fire engulfing the cabin;

   h. Was not manufactured with adequate fireproof or flame retardant materials that prevent fire from entering the cabin through openings; and

   i. Was not manufactured to be reasonably safe in the event a foreseeable fire occurred.

   27. The subject truck was defective when it left the possession of Workhorse.

   28. The subject truck reached Plaintiff, its user, without a substantial change that affected its condition.

   29. As a direct and proximate result of Workhorse's defectively manufactured truck, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

   30. **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

### COUNT 3: STRICT LIABILITY FOR FAILURE TO WARN

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

31.  At all material times, Workhorse was engaged in the business of designing, manufacturing, selling, importing, distributing, and supplying trucks to be used by the general public.

32.  Workhorse designed, manufactured, distributed, and placed the subject truck into the stream of commerce expecting it would reach the public, including purchasers and all end users, without a substantial change that affected its condition.

33.  At all material times, Workhorse knew the subject truck was defectively designed and manufactured such that its thin aluminum engine cover provided inadequate fire protection, and it otherwise lacked adequate fireproofing, fire suppression, flame retardant materials, or other safeguards to protect occupants of the driver's cabin from the known and foreseeable risks posed by an engine fire.

34.  Such propensity caused the product to perform less safely than an ordinary consumer would expect when the product was used as intended or in a manner reasonably foreseeable by Workhorse when it manufactured the subject truck.

35.  At all material times, Workhorse knew that these defects were not discoverable by ordinary examination.

36.  Notwithstanding this knowledge, Workhorse did not issue any adequate warning concerning the design or manufacturing defects or the dangerous propensities of the subject truck.

37.  The subject truck was defective for want of any warnings regarding the lack of adequate fire protection when it left the possession of Workhorse.

9

38. The subject truck reached its user, Reinier, without a substantial change that affected the condition of the product.

39. As a direct and proximate result of Workhorse's failure to warn, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

40. **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

### COUNT 4: NEGLIGENCE

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

41. At all times material, Workhorse owed a duty to all foreseeable users of the subject truck, including Reinier, to exercise reasonable care in the design, development, manufacture, assembly, marketing, and sale of the subject truck.

42. Workhorse, by and through the acts and omissions of its employees, agents, representatives, and servants, breached its duty of reasonable care in one or more of the following ways:

    a. Failing to design or manufacture the subject truck to withstand ordinary and foreseeable use;

    b. Failing to design or manufacture the subject truck to minimize or eliminate the foreseeable risk of an engine fire engulfing the cabin;

10

c.     Failing to design or manufacture the subject truck with any. or adequate, safeguards to prevent a foreseeable engine fire from engulfing the cabin;

d.     Failing to design or manufacture the subject truck with adequate fireproofing, fire suppression, flame retardant materials, or other safeguards to allow an occupant in the cabin enough time to escape in the event of a foreseeable engine fire;

e.     Failing to design or manufacture the subject truck with adequate fireproof or flame retardant materials to provide the cabin with sufficient insulation or protection from a foreseeable engine fire;

f.     Failing to design or manufacture the subject truck with a fire suppression system, which would have minimized or eliminated the foreseeable risk of an engine fire engulfing the cabin;

g.     Failing to design or manufacture the subject truck with adequate fireproof or flame retardant materials that prevent fire from entering the cabin through openings; and

h.     Failing to design or manufacture the subject truck to be reasonably safe in the event a foreseeable fire occurred.

i.     Failing to properly test the subject truck's fire protection for the driver's cabin;

j.     Failing to utilize adequate and appropriate testing methods, standards, and protocols necessary to minimize or reduce the risk to cabin occupants in a foreseeable fire, or to discover the risk to cabin occupants;

k.     Designing, manufacturing, selling, and distributing the subject truck in a condition such that it was more likely than reasonable that an engine fire could quickly spread straight into the cabin;

l. Failing to design and manufacture the subject truck to comply with applicable safety standards or codes;

m. Distributing and selling the subject truck when there was no adequate fire safety protection for occupants in the cabin to protect them from a foreseeable engine fire;

n. Failing to design and manufacture the subject truck with adequate and proper materials;

o. Failing to design and manufacture the subject truck using processes that ensured a reasonable level of safety and quality control; and

p. Distributing and selling the subject truck in a condition that Defendant knew rendered it significantly dangerous to occupants of the cabin when used in an ordinary and foreseeable manner.

43. As a direct and proximate result of Workhorse's above-described negligence, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

44. **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

COUNT 5: NEGLIGENT FAILURE TO WARN

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

45.     Workhorse owed a duty to the general consuming public, including purchasers, end users of the subject truck, and Reinier, to exercise reasonable care in giving appropriate warnings about particular risks of the subject truck that Workhorse knew or should have known were involved in the reasonably foreseeable use of the subject truck.

46.     Notwithstanding Workhorse's knowledge of the risk of harm to occupants of the subject truck from the unreasonably dangerous lack of fire protection, Workhorse, by and through the acts and omissions of its employees, agents, representatives, and servants, breached its duty of reasonable care by failing to provide appropriate warnings for the subject truck as such:

      a.     Failing to provide adequate warning of design defects;

      b.     Failing to provide adequate warning of manufacturing defects;

      c.     Failing to provide adequate warning of dangerous propensities;

      d.     Failing to affix any warning labels in the cabin of the subject truck, or to provide a warning of any kind, cautioning the general consuming public, including purchasers and all end users, that it lacked adequate fire protection and that the aluminum sheet would quickly melt away in the event of an engine fire;

      e.     Failing to attach a permanent warning label in a conspicuous location on the subject truck;

      f.     Failing to comply with applicable standards, codes, and/or ordinances regarding the placement of warning labels, instructions, or notices; and

      g.     Failing to provide adequate warning that the subject truck was not designed

13

or manufactured to provide adequate fire protection to an occupant in the event of an engine fire.

47.     As a direct and proximate result of Workhorse's above-described negligence, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

48.     **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

### Claims Against Utilimaster Corporation

#### COUNT 6: STRICT LIABILITY FOR DEFECTIVE PRODUCT DESIGN

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

49.     At all material times, Utilimaster was engaged in the business of designing, manufacturing, selling, importing, distributing, and supplying trucks to be used by and in the general public.

50.     Utilimaster designed, manufactured, distributed, and placed the subject truck into the stream of commerce expecting it would reach the public, including purchasers and all end users, without a substantial change that affected its condition.

51.     The subject truck was unreasonably dangerous because of its design, in that it failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by Utilimaster when it designed the subject truck. Specifically, the subject

truck:

      a.      Was not designed to withstand ordinary and foreseeable use;

      b.      Was designed with a thin aluminum engine cover separating the driver's cab from the engine compartment, which provided inadequate fire protection in the event of an engine fire;

      c.      Was not designed to minimize or eliminate the foreseeable risk of an engine fire engulfing the cabin;

      d.      Was designed with no, or inadequate, safeguards to prevent a foreseeable engine fire from engulfing the cabin;

      e.      Was not designed with adequate fireproofing, fire suppression, flame retardant materials, or other safeguards to allow an occupant in the cabin enough time to escape in the event of a foreseeable engine fire;

      f.      Was not designed with adequate fireproof or flame retardant materials to provide the cabin with sufficient insulation or protection from a foreseeable engine fire;

      g.      Was not designed with a fire suppression system, which would have minimized or eliminated the foreseeable risk of an engine fire engulfing the cabin;

      h.      Was not designed with adequate fireproof or flame retardant materials that prevent fire from entering the cabin through openings; and

      i.      Was not designed to be reasonably safe in the event a foreseeable fire occurred.

52.      The subject truck was defective when it left the possession of Utilimaster.

53.      The subject truck reached Plaintiff, its user, without a substantial change that affected its condition.

54.     As a direct and proximate result of Utilimaster's defectively designed truck, Reinier was severely burned and nearly killed. and sustained the damages demanded below.

55.     **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

### COUNT 7: STRICT LIABILITY FOR DEFECTIVE MANUFACTURING OF PRODUCT

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

56.     At all material times, Utilimaster was engaged in the business of designing, manufacturing, selling, importing, distributing, and supplying trucks to be used by the general public.

57.     Utilimaster designed, manufactured, distributed, and placed the subject truck into the stream of commerce expecting it would reach the public, including purchasers and all end users, without a substantial change that affected its condition.

58.     The subject truck was unreasonably dangerous due to a manufacturing defect, in that because of the way it was manufactured it failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by Utilimaster when it manufactured the subject truck. Specifically, the subject truck:

a.     Was not manufactured to withstand ordinary and foreseeable use;

b.     Was manufactured with a thin aluminum engine cover separating the

16

driver's cab from the engine compartment, which provided inadequate fire protection in the event of an engine fire;

     c.     Was not manufactured to minimize or eliminate the foreseeable risk of an engine fire engulfing the cabin:

     d.     Was manufactured with no, or inadequate. safeguards to prevent a foreseeable engine fire from engulfing the cabin;

     e.     Was not manufactured with adequate fireproofing, fire suppression, flame retardant materials, or other safeguards to allow an occupant in the cabin enough time to escape in the event of a foreseeable engine fire;

     f.     Was not manufactured with adequate fireproof or flame retardant materials to provide the cabin with sufficient insulation or protection from a foreseeable engine fire;

     g.     Was not manufactured with a fire suppression system, which would have minimized or eliminated the foreseeable risk of an engine fire engulfing the cabin;

     h.     Was not manufactured with adequate fireproof or flame retardant materials that prevent fire from entering the cabin through openings; and

     i.     Was not manufactured to be reasonably safe in the event a foreseeable fire occurred.

59.     The subject truck was defective when it left the possession of Utilimaster.

60.     The subject truck reached Plaintiff, its user, without a substantial change that affected its condition.

61.     As a direct and proximate result of Utilimaster's defectively manufactured truck, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

62.   **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

### COUNT 8: STRICT LIABILITY FOR FAILURE TO WARN

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

63.   At all material times, Utilimaster was engaged in the business of designing, manufacturing, selling, importing, distributing, and supplying trucks to be used by the general public.

64.   Utilimaster designed, manufactured, distributed, and placed the subject truck into the stream of commerce expecting it would reach the public, including purchasers and all end users, without a substantial change that affected its condition.

65.   At all material times, Utilimaster knew the subject truck was defectively designed and manufactured such that its thin aluminum engine cover provided inadequate fire protection, and it otherwise lacked adequate fireproofing, fire suppression, flame retardant materials, or other safeguards to protect occupants of the driver's cabin from the known and foreseeable risks posed by an engine fire.

66.   Such propensity caused the product to perform less safely than an ordinary consumer would expect when the product was used as intended or in a manner reasonably foreseeable by Utilimaster when it manufactured the subject truck.

18

67.     At all material times, Utilimaster knew that these defects were not discoverable by ordinary examination.

68.     Notwithstanding this knowledge, Utilimaster did not issue any adequate warning concerning the design or manufacturing defects or the dangerous propensities of the subject truck.

69.     The subject truck was defective for want of any warnings regarding the lack of adequate fire protection when it left the possession of Utilimaster.

70.     The subject truck reached its user, Reinier, without a substantial change that affected the condition of the product.

71.     As a direct and proximate result of Utilimaster's failure to warn, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

72.     **WHEREFORE,** Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

### COUNT 9: NEGLIGENCE

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

73.     At all times material, Utilimaster owed a duty to all foreseeable users of the subject truck, including Reinier, to exercise reasonable care in the design, development, manufacture, assembly, marketing, and sale of the subject truck.

19

74.   Utilimaster, by and through the acts and omissions of its employees, agents, representatives, and servants, breached its duty of reasonable care in one or more of the following ways:

a.   Failing to design or manufacture the subject truck to withstand ordinary and foreseeable use;

b.   Failing to design or manufacture the subject truck to minimize or eliminate the foreseeable risk of an engine fire engulfing the cabin;

c.   Failing to design or manufacture the subject truck with any, or adequate, safeguards to prevent a foreseeable engine fire from engulfing the cabin;

d.   Failing to design or manufacture the subject truck with adequate fireproofing, fire suppression, flame retardant materials, or other safeguards to allow an occupant in the cabin enough time to escape in the event of a foreseeable engine fire;

e.   Failing to design or manufacture the subject truck with adequate fireproof or flame retardant materials to provide the cabin with sufficient insulation or protection from a foreseeable engine fire;

f.   Failing to design or manufacture the subject truck with a fire suppression system, which would have minimized or eliminated the foreseeable risk of an engine fire engulfing the cabin;

g.   Failing to design or manufacture the subject truck with adequate fireproof or flame retardant materials that prevent fire from entering the cabin through openings; and

h.   Failing to design or manufacture the subject truck to be reasonably safe in the event a foreseeable fire occurred.

i.   Failing to properly test the subject truck's fire protection for the driver's

cabin;

j.      Failing to utilize adequate and appropriate testing methods. standards, and protocols necessary to minimize or reduce the risk to cabin occupants in a foreseeable fire, or to discover the risk to cabin occupants;

k.      Designing, manufacturing, selling, and distributing the subject truck in a condition such that it was more likely than reasonable that an engine fire could quickly spread straight into the cabin;

l.      Failing to design and manufacture the subject truck to comply with applicable safety standards or codes;

m.      Distributing and selling the subject truck when there was no adequate fire safety protection for occupants in the cabin to protect them from a foreseeable engine fire;

n.      Failing to design and manufacture the subject truck with adequate and proper materials;

o.      Failing to design and manufacture the subject truck using processes that ensured a reasonable level of safety and quality control; and

p.      Distributing and selling the subject truck in a condition that Defendant knew rendered it significantly dangerous to occupants of the cabin when used in an ordinary and foreseeable manner.

75.     As a direct and proximate result of Utilimaster's above-described negligence, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

76.     **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for

the enjoyment of life. loss of past and future earnings. loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions. and all other elements of damages allowed by law.

### COUNT 10: NEGLIGENT FAILURE TO WARN

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

77.    Utilimaster owed a duty to the general consuming public, including purchasers, end users of the subject truck, and Reinier, to exercise reasonable care in giving appropriate warnings about particular risks of the subject truck that Utilimaster knew or should have known were involved in the reasonably foreseeable use of the subject truck.

78.    Notwithstanding Utilimaster's knowledge of the risk of harm to occupants of the subject truck from the unreasonably dangerous lack of fire protection, Utilimaster, by and through the acts and omissions of its employees, agents, representatives, and servants, breached its duty of reasonable care by failing to provide appropriate warnings for the subject truck as such:

      a.    Failing to provide adequate warning of design defects;

      b.    Failing to provide adequate warning of manufacturing defects;

      c.    Failing to provide adequate warning of dangerous propensities;

      d.    Failing to affix any warning labels in the cabin of the subject truck, or to provide a warning of any kind, cautioning the general consuming public, including purchasers and all end users, that it lacked adequate fire protection and that the aluminum sheet would quickly melt away in the event of an engine fire;

      e.    Failing to attach a permanent warning label in a conspicuous location on the subject truck;

f.     Failing to comply with applicable standards, codes, and/or ordinances regarding the placement of warning labels, instructions, or notices; and

g.     Failing to provide adequate warning that the subject truck was not designed or manufactured to provide adequate fire protection to an occupant in the event of an engine fire.

79.     As a direct and proximate result of Utilimaster's above-described negligence, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

80.     **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

## Claims Against The Shyft Group USA, Inc.

### COUNT 11: STRICT LIABILITY FOR DEFECTIVE PRODUCT DESIGN

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

81.     At all material times, Shyft Group was engaged in the business of designing, manufacturing, selling, importing, distributing, and supplying trucks to be used by and in the general public.

82.     Shyft Group designed, manufactured, distributed, and placed the subject truck into the stream of commerce expecting it would reach the public, including purchasers and all end

23

users, without a substantial change that affected its condition.

83.     The subject truck was unreasonably dangerous because of its design, in that it failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by Shyft Group when it designed the subject truck. Specifically, the subject truck:

a.     Was not designed to withstand ordinary and foreseeable use;

b.     Was designed with a thin aluminum engine cover separating the driver's cab from the engine compartment, which provided inadequate fire protection in the event of an engine fire;

c.     Was not designed to minimize or eliminate the foreseeable risk of an engine fire engulfing the cabin;

d.     Was designed with no, or inadequate, safeguards to prevent a foreseeable engine fire from engulfing the cabin;

e.     Was not designed with adequate fireproofing, fire suppression, flame retardant materials, or other safeguards to allow an occupant in the cabin enough time to escape in the event of a foreseeable engine fire;

f.     Was not designed with adequate fireproof or flame retardant materials to provide the cabin with sufficient insulation or protection from a foreseeable engine fire;

g.     Was not designed with a fire suppression system, which would have minimized or eliminated the foreseeable risk of an engine fire engulfing the cabin;

h.     Was not designed with adequate fireproof or flame retardant materials that prevent fire from entering the cabin through openings; and

i.     Was not designed to be reasonably safe in the event a foreseeable fire

24

occurred.

84.     The subject truck was defective when it left the possession of Shyft Group.

85.     The subject truck reached Plaintiff, its user, without a substantial change that affected its condition.

86.     As a direct and proximate result of Shyft Group's defectively designed truck. Reinier was severely burned and nearly killed, and sustained the damages demanded below.

87.     **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

### COUNT 12: STRICT LIABILITY FOR DEFECTIVE MANUFACTURING OF PRODUCT

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

88.     At all material times, Shyft Group was engaged in the business of designing, manufacturing, selling, importing, distributing, and supplying trucks to be used by the general public.

89.     Shyft Group designed, manufactured, distributed, and placed the subject truck into the stream of commerce expecting it would reach the public, including purchasers and all end users, without a substantial change that affected its condition.

90.     The subject truck was unreasonably dangerous due to a manufacturing defect, in that because of the way it was manufactured it failed to perform as safely as an ordinary consumer

would expect when used as intended or in a manner reasonably foreseeable by Shyft Group when it manufactured the subject truck. Specifically, the subject truck:

    a.    Was not manufactured to withstand ordinary and foreseeable use;

    b.    Was manufactured with a thin aluminum engine cover separating the driver's cab from the engine compartment, which provided inadequate fire protection in the event of an engine fire;

    c.    Was not manufactured to minimize or eliminate the foreseeable risk of an engine fire engulfing the cabin;

    d.    Was manufactured with no, or inadequate, safeguards to prevent a foreseeable engine fire from engulfing the cabin;

    e.    Was not manufactured with adequate fireproofing, fire suppression, flame retardant materials, or other safeguards to allow an occupant in the cabin enough time to escape in the event of a foreseeable engine fire;

    f.    Was not manufactured with adequate fireproof or flame retardant materials to provide the cabin with sufficient insulation or protection from a foreseeable engine fire;

    g.    Was not manufactured with a fire suppression system, which would have minimized or eliminated the foreseeable risk of an engine fire engulfing the cabin;

    h.    Was not manufactured with adequate fireproof or flame retardant materials that prevent fire from entering the cabin through openings; and

    i.    Was not manufactured to be reasonably safe in the event a foreseeable fire occurred.

91.    The subject truck was defective when it left the possession of Shyft Group.

92.    The subject truck reached Plaintiff, its user, without a substantial change that

affected its condition.

93.     As a direct and proximate result of Shyft Group's defectively manufactured truck, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

94.     **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages. costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

### COUNT 13: STRICT LIABILITY FOR FAILURE TO WARN

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

95.     At all material times, Shyft Group was engaged in the business of designing, manufacturing, selling, importing, distributing, and supplying trucks to be used by the general public.

96.     Shyft Group designed, manufactured, distributed, and placed the subject truck into the stream of commerce expecting it would reach the public, including purchasers and all end users, without a substantial change that affected its condition.

97.     At all material times, Shyft Group knew the subject truck was defectively designed and manufactured such that its thin aluminum engine cover provided inadequate fire protection, and it otherwise lacked adequate fireproofing, fire suppression, flame retardant materials, or other safeguards to protect occupants of the driver's cabin from the known and foreseeable risks posed by an engine fire.

27

98.    Such propensity caused the product to perform less safely than an ordinary consumer would expect when the product was used as intended or in a manner reasonably foreseeable by Shyft Group when it manufactured the subject truck.

99.    At all material times, Shyft Group knew that these defects were not discoverable by ordinary examination.

100.    Notwithstanding this knowledge, Shyft Group did not issue any adequate warning concerning the design or manufacturing defects or the dangerous propensities of the subject truck.

101.    The subject truck was defective for want of any warnings regarding the lack of adequate fire protection when it left the possession of Shyft Group.

102.    The subject truck reached its user, Reinier, without a substantial change that affected the condition of the product.

103.    As a direct and proximate result of Shyft Group's failure to warn, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

104.    **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

COUNT 14: NEGLIGENCE

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

105.   At all times material, Shyft Group owed a duty to all foreseeable users of the subject truck, including Reinier, to exercise reasonable care in the design, development, manufacture, assembly, marketing, and sale of the subject truck.

106.   Shyft Group, by and through the acts and omissions of its employees, agents, representatives, and servants, breached its duty of reasonable care in one or more of the following ways:

a.   Failing to design or manufacture the subject truck to withstand ordinary and foreseeable use;

b.   Failing to design or manufacture the subject truck to minimize or eliminate the foreseeable risk of an engine fire engulfing the cabin;

c.   Failing to design or manufacture the subject truck with any, or adequate, safeguards to prevent a foreseeable engine fire from engulfing the cabin;

d.   Failing to design or manufacture the subject truck with adequate fireproofing, fire suppression, flame retardant materials, or other safeguards to allow an occupant in the cabin enough time to escape in the event of a foreseeable engine fire;

e.   Failing to design or manufacture the subject truck with adequate fireproof or flame retardant materials to provide the cabin with sufficient insulation or protection from a foreseeable engine fire;

f.   Failing to design or manufacture the subject truck with a fire suppression system, which would have minimized or eliminated the foreseeable risk of an engine fire

29

engulfing the cabin;

g.      Failing to design or manufacture the subject truck with adequate fireproof or flame retardant materials that prevent fire from entering the cabin through openings; and

h.      Failing to design or manufacture the subject truck to be reasonably safe in the event a foreseeable fire occurred.

i.      Failing to properly test the subject truck's fire protection for the driver's cabin;

j.      Failing to utilize adequate and appropriate testing methods, standards, and protocols necessary to minimize or reduce the risk to cabin occupants in a foreseeable fire, or to discover the risk to cabin occupants;

k.      Designing, manufacturing, selling, and distributing the subject truck in a condition such that it was more likely than reasonable that an engine fire could quickly spread straight into the cabin;

l.      Failing to design and manufacture the subject truck to comply with applicable safety standards or codes;

m.      Distributing and selling the subject truck when there was no adequate fire safety protection for occupants in the cabin to protect them from a foreseeable engine fire;

n.      Failing to design and manufacture the subject truck with adequate and proper materials;

o.      Failing to design and manufacture the subject truck using processes that ensured a reasonable level of safety and quality control; and

p.      Distributing and selling the subject truck in a condition that Defendant knew rendered it significantly dangerous to occupants of the cabin when used in an ordinary and

foreseeable manner.

107.    As a direct and proximate result of Shyft Group's above-described negligence, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

108.    **WHEREFORE**, Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

### COUNT 15: NEGLIGENT FAILURE TO WARN

Plaintiff hereby incorporates by reference Paragraphs 1 through 16 as though fully set forth herein.

109.    Shyft Group owed a duty to the general consuming public, including purchasers, end users of the subject truck, and Reinier, to exercise reasonable care in giving appropriate warnings about particular risks of the subject truck that Shyft Group knew or should have known were involved in the reasonably foreseeable use of the subject truck.

110.    Notwithstanding Shyft Group's knowledge of the risk of harm to occupants of the subject truck from the unreasonably dangerous lack of fire protection, Shyft Group, by and through the acts and omissions of its employees, agents, representatives, and servants, breached its duty of reasonable care by failing to provide appropriate warnings for the subject truck as such:

      a.     Failing to provide adequate warning of design defects;

      b.     Failing to provide adequate warning of manufacturing defects;

      c.     Failing to provide adequate warning of dangerous propensities;

31

d.      Failing to affix any warning labels in the cabin of the subject truck. or to provide a warning of any kind, cautioning the general consuming public, including purchasers and all end users, that it lacked adequate fire protection and that the aluminum sheet would quickly melt away in the event of an engine fire;

e.      Failing to attach a permanent warning label in a conspicuous location on the subject truck;

f.      Failing to comply with applicable standards, codes, and/or ordinances regarding the placement of warning labels, instructions, or notices; and

g.      Failing to provide adequate warning that the subject truck was not designed or manufactured to provide adequate fire protection to an occupant in the event of an engine fire.

111.    As a direct and proximate result of Shyft Group's above-described negligence, Reinier was severely burned and nearly killed, and sustained the damages demanded below.

112.    **WHEREFORE,** Reinier Angulo demands judgment in the form of money damages, costs, interest, and attorney's fees as allowed by law as compensation for past and future pain and suffering, psychological injuries, disability, handicap, inconvenience, loss of capacity for the enjoyment of life, loss of past and future earnings, loss of earning capacity in the future, diminished earning capacity in the future, aggravation of pre-existing conditions, and all other elements of damages allowed by law.

Filing # 153197809 E-Filed 07/12/2022 05:18:50 PM

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 2022-012677-CA-01

**REINIER ANGULO,**

Plaintiff,

vs.

**WORKHORSE GROUP, INC.,
UTILIMASTER CORPORATION,** and
**THE SHYFT GROUP USA, INC.,**

Defendants.

_____/

### INITIAL REQUEST FOR ADMISSIONS
### TO DEFENDANT UTILIMASTER CORPORATION

Plaintiff, by and through undersigned counsel, propounds his Initial Request for Admissions

to Defendant, to be answered in writing, under oath, within your knowledge or the knowledge of

your agents, servants, employees or attorneys, on or before 45 days from the date of service in

accordance with Rule 1.370, Florida Rules of Civil Procedure.

### DEFINITIONS

A.      "You", "your" and "defendant" means UTILIMASTER CORPORATION, also
known as Utilimaster, and/or its employees, agents, representatives, and servants.

B.      "Subject truck" means the truck involved in the subject incident, a 2010 Workhorse
W62 truck, bearing Florida license plate GCB105 and vehicle identification number
5B4MPG298A3439955.

C.      "Plaintiff" refers to Reinier Angulo.

D.      "Date of incident" refers to a date on or about February 5, 2020.

## REQUESTS FOR ADMISSION

1. Admit that Defendant has been properly named as a Defendant in this case based on the allegations set forth in the Complaint.

2. Admit that Defendant, as named in the Complaint, has been sued in its proper capacity.

3. Admit that Defendant has been properly served with the summons and Complaint in this case.

4. Admit that jurisdiction and venue are proper in this case.

5. Admit that there are no statute of limitations defenses based on the allegations of the complaint.

6. Admit that there are no statute of repose defenses based on the allegations of the complaint.

7. Admit that Defendant manufactured the subject truck.

8. Admit that Defendant designed the subject truck.

9. Admit that Defendant distributed the subject truck.

10. Admit that Defendant sold the subject truck.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that an original of this pleading was filed with the Clerk of the Court and one copy was served on the defendant with the Summons and Complaint in this matter.

**LEESFIELD SCOLARO, P.A.**
Attorneys for the Plaintiff
2350 South Dixie Highway
Miami, Florida 33133
Tel: 305-854-4900
Fax: 305-854-8266

**By:**    */s/ Adam Rose*

| | |
|---|---|
| **THOMAS SCOLARO** | Florida Bar No. 178276 |
| Primary service e-mail: | scolaro@leesfield.com |
| Additional service e-mail 1: | azcuy@leesfield.com |
| **ADAM T. ROSE** | Florida Bar No. 123673 |
| Primary service e-mail: | rose@leesfield.com |
| Additional service e-mail 1: | arguello@leesfield.com |

2

Filing # 153197809 E-Filed 07/12/2022 05:18:50 PM

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 2022-012677-CA-01

**REINIER ANGULO.**

    Plaintiff,

vs.

**WORKHORSE GROUP, INC.,**
**UTILIMASTER CORPORATION,** and
**THE SHYFT GROUP USA, INC.,**

    Defendants.

_____/

## INITIAL REQUEST FOR PRODUCTION
## TO DEFENDANT UTILIMASTER CORPORATION

    Plaintiff, by and through undersigned counsel, propounds his Initial Request for Production

to Defendant, to be answered in writing, under oath, within your knowledge or the knowledge of

your agents, servants, employees or attorneys, on or before 45 days from the date of service in

accordance with Rule 1.350, Florida Rules of Civil Procedure.

## DEFINITIONS

A.    "You", "your" and "defendant" means UTILIMASTER CORPORATION, also
    known as Utilimaster, and/or its employees, agents, representatives, and servants.

B.    "Subject truck" means the truck involved in the subject incident, a 2010 Workhorse
    W62 truck, bearing Florida license plate GCB105 and vehicle identification number
    5B4MPG298A3439955.

C.    "Plaintiff" refers to Reinier Angulo.

D.    "Date of incident" refers to a date on or about February 5, 2020.

## REQUESTS

1.   Any and all insurance policies, including excess or umbrella, providing benefits or coverage to Defendant for any claimed injury or damage from the subject incident described in the complaint.

2.   Any and all documents reflecting the sale of the subject truck.

3.   Any and all statements of either Plaintiff(s), Plaintiffs' agents, witnesses, defendant(s), defendant's agents and employees bearing on knowledge of facts relevant and material to the claims and defenses in the instant litigation.

4.   All ordinances, regulations, rules, statutes, customs and practices, and publications upon which your defenses herein are made.

5.   All documents and items specified in your answers to interrogatories as coming within Rule 1.340, Florida Rules of Civil Procedure, exercising the option to produce records in lieu of compilation of summary based on records and reports.

6.   Any and all written, audio-taped or video-taped statements, or any stenographic, mechanical, electrical or other recorded or transcribed statements that is a substantially verbatim recital of an oral statement contemporaneously made by Plaintiff(s).

7.   Any accident and/or incident reports relative to the subject incident.

8.   Any and all blueprints, designs, layouts, documents, plans, schematics, and/or any other document regarding the manufacture, design, and/or assembly of the subject truck.

9.   Any and all design criteria and/or standards used or relied upon for the manufacture and/or design of the subject truck.

10.   Any and all testing (of any kind) or inspections conducted to ensure compliance with the design and any and all applicable codes, guidelines, and/or standards.

11.   Any and all contracts and/or agreements between this Defendant and any other party in this case related to the subject truck and/or Workhorse W62 trucks.

12.   Any and all plans, blue prints, schematics, designs, and/or renderings relating or pertaining to the subject truck's model.

13.   Any and all documents showing and/or evidencing that any other party in this case approved the plans, blue prints, schematics, designs, and/or renderings of the subject truck's model.

14.   Any and all contracts and/or agreements between this Defendant and any other person or entity related to the manufacture, design, inspection, consultation, and/or testing of the subject truck's model.

15.   Any and all records, reports, memos, and/or documents of any kind pertaining to use of aluminum in trucks.

16.   Any and all records, reports, memos, and/or documents of any kind pertaining to use of aluminum in the subject truck's model.

2

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that an original of this pleading was filed with the Clerk of the Court

and one copy was served on the defendant with the Summons and Complaint in this matter.

> **LEESFIELD SCOLARO, P.A.**
> Attorneys for the Plaintiff
> 2350 South Dixie Highway
> Miami, Florida 33133
> Tel: 305-854-4900
> Fax: 305-854-8266

**By:**   */s/ Adam Rose*

| | |
|---|---|
| **THOMAS SCOLARO** | Florida Bar No. 178276 |
| Primary service e-mail: | scolaro@leesfield.com |
| Additional service e-mail 1: | azcuy@leesfield.com |
| **ADAM T. ROSE** | Florida Bar No. 123673 |
| Primary service e-mail: | rose@leesfield.com |
| Additional service e-mail 1: | arguello@leesfield.com |

3

Filing # 153197809 E-Filed 07/12/2022 05:18:50 PM

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 2022-012677-CA-01

**REINIER ANGULO,**

Plaintiff,

vs.

**WORKHORSE GROUP, INC.,**
**UTILIMASTER CORPORATION,** and
**THE SHYFT GROUP USA, INC.,**

Defendants.
_____/

## NOTICE OF SERVICE OF INITIAL INTERROGATORIES
## TO DEFENDANT UTILIMASTER CORPORATION

Plaintiff, by and through undersigned counsel, propounds the following Interrogatories on

Defendant, to be answered in writing, under oath, within your knowledge or the knowledge of your

agents, servants, employees or attorneys, on or before 45 days from the date of service in accordance

with Rule 1.340, Florida Rules of Civil Procedure.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that an original of this pleading was filed with the Clerk of the Court

and one copy was served on the defendant with the Summons and Complaint in this matter.

**LEESFIELD SCOLARO, P.A.**
Attorneys for the Plaintiff
2350 South Dixie Highway
Miami, Florida 33133
Tel: 305-854-4900
Fax: 305-854-8266

By:  /s/ Adam Rose
**THOMAS SCOLARO**          Florida Bar No. 178276
Primary service e-mail:     scolaro@leesfield.com
Additional service e-mail 1:  azcuy@leesfield.com
**ADAM T. ROSE**             Florida Bar No. 123673
Primary service e-mail:     rose@leesfield.com
Additional service e-mail 1:  arguello@leesfield.com

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 2022-012677-CA-01

REINIER ANGULO,

     Plaintiff,

vs.

**WORKHORSE GROUP, INC.,
UTILIMASTER CORPORATION**, and
**THE SHYFT GROUP USA, INC.,**

     Defendants.

_____/

## NOTICE OF SERVICE OF INITIAL INTERROGATORIES
## TO DEFENDANT UTILIMASTER CORPORATION

     Plaintiff, by and through undersigned counsel, propounds the following Interrogatories on

Defendant, to be answered in writing, under oath, within your knowledge or the knowledge of your

agents, servants, employees or attorneys, on or before 45 days from the date of service in accordance

with Rule 1.340, Florida Rules of Civil Procedure.

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that an original of this pleading was filed with the Clerk of the Court

and one copy was served on the defendant with the Summons and Complaint in this matter.

               **LEESFIELD SCOLARO, P.A.**
               Attorneys for the Plaintiff
               2350 South Dixie Highway
               Miami, Florida 33133
               Tel: 305-854-4900
               Fax: 305-854-8266

     **By:**   */s/ Adam Rose*
         **THOMAS SCOLARO**      Florida Bar No. 178276
         Primary service e-mail:     scolaro@leesfield.com
         Additional service e-mail 1:  azcuy@leesfield.com
         **ADAM T. ROSE**        Florida Bar No. 123673
         Primary service e-mail:     rose@leesfield.com
         Additional service e-mail 1:  arguello@leesfield.com

## **DEFINITIONS**

A.     "You", "your" and "defendant" means UTILIMASTER CORPORATION, also
        known as Utilimaster, and/or its employees, agents, representatives, and servants.


B.     "Subject truck" means the truck involved in the subject incident, a 2010 Workhorse
        W62 truck, bearing Florida license plate GCB105 and vehicle identification number
        5B4MPG298A3439955.


C.     "Plaintiff" refers to Reinier Angulo.


D.     "Date of incident" refers to a date on or about February 5, 2020.

2

## INITIAL INTERROGATORIES TO DEFENDANT UTILIMASTER CORPORATION

1.   What is the name and address of the person answering these interrogatories and, if applicable, the person's official position or relationship with the party to whom the interrogatories are directed?

2.   Describe any and all policies of insurance that Defendant contends covers or may cover it for allegations set forth in the Plaintiff's complaint, **including excess or umbrella**, detailing as to such policies the name of the insurer, the number of the policy, the effective dates of the policy, the available limits of liability, and the name and address of the custodian of the policy.

3.   Do you contend any person or entity other than Defendant is, or may be, liable in whole or part for the claims asserted against you in this lawsuit? If so, state the full name and address of each such person or entity, the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not you have notified each such person or entity of your contention.

4.   State the date of manufacture of the subject truck described in the Complaint, the date of sale, the purchaser of the subject truck, and identify the name and address of 1) the manufacturer(s) of the subject truck, 2) the designer(s) of the subject truck, 3) the distributor(s) of the subject truck, and 4) all other entities in the distribution chain between the manufacturer and sale of the subject truck.

5.   State with specificity your involvement and/or role with the subject truck.

6.   State the name and address of any and all entities responsible for 1) designing the subject truck to have aluminum flooring in the cab, 2) installing the aluminum flooring in the subject truck's cab, and 3) manufacturing the subject truck with aluminum flooring in the cab.

3

_____
                    AFFIANT

STATE OF                  )
                          )
COUNTY OF                 )

     BEFORE ME, the undersigned authority, personally appeared _____ who, after being first duly sworn, deposes and says that the attached answers to interrogatories are true and correct.

     SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2022.


_____
NOTARY PUBLIC,
STATE OF FLORIDA AT LARGE


_____
PRINT NAME


_____ Personally Known; or _____ Produced Identification


Type of Identification Produced: _____

My Commission Expires: _____

4